The facts will be found in the opinion.
Bradbury, J.
The city of Toledo, in the course of proceedings instituted for the improvements of certain of its streets, sought to assess the “cost and expense” incurred for such improvements upon the abutting property ‘ ‘ by the foot front of the property bounding and abutting upon the im *449 provement,” pursuant to the provisions of section 2264, Revised Statutes, passed March 5, 1890 (87 Ohio Laws, 43). This court in the case of Haviland v. The City of Columbus, 50 Ohio St., 471, was required to construe this language, and it there held that where a municipal corporation sought to assess the cost and expense of improving a street upon the abutting property by the front foot, regard must be had for the real front, which was a matter of fact depending on the manner in which it had been laid out, built upon, occupied and used by the owner, and where a lot abuts lengthwise on an improvement, but fronts breadthwise on another street, it should be assessed for such improvement to the extent of such lengthwise frontage only. And in the case of Sandrook v. Columbus et til., 51 Ohio st., 317, this court held that in the case of an unimproved, lot lying on a corner of two streets and extending along one of them 371 feet and along the other 150 feet, it should be deemed to front on the former street.
The city of Toledo, in the cases under consideration. reargues these questions, especially those in the Haviland ease, and asks their reconsideration. The reasons advanced by counsel for the city are not without force, but do not convince us that either of those two causes were erroneously decided, and we reaffirm the doctrine they announce.
Each of the three cases under consideration, however, has special features that distinguish it from both those cases. While we do not hold that a corner lot upon which a single structure stands, or a single main structure with appropriate or incidental minor ones appurtenant to it, may not have two fronts — one on each street — yet that can only occur under special or peculiar circumstances, *450 which we do not attempt to forecast. The question of frontage should be determined according to the ordinary acceptation of that term. There is nothing technical or abstruse connected with the subject. The common knowledge of mankind is usually amply sufficient to determine the fact whenever a controversy arises respecting the front of a lot. Where a lot is unimproved, a glance at the plat is generally enough; if the lot is rectangular, with two of its parallel lines distinctly longer than the other two, the usual form of town and city lots, the mind at once recognizes it as fronting on the street which runs along its shorter line, or end. And although the lot may not be rectangular, yet if its length along- one street is clearly and , considerably greater than along the other, the same recognition occurs. Doubtless a lot may have such shape that the question of its frontage might be of difficult solution, but such cases are exceptional, and should not affect the general question.
In the case of a corner lot in the usual form, therefore, a natural inference arises that its narrow side, or end, is its front, because that accords with our common knowledge and experience of such matters. This constitutes a presumption of fact. Should the lot be improved, this presumption continues, unless there is something in the nature or character of the improvement to rebut it. Doubtless the plan or style of the structure, in connection with the uses for which it was designed, will in many instances overcome this presumption, and in every instance becomes a material factor in determining the question of frontage. The fact, however, that the structure, whether designed for a dwelling house or a place *451 of business, is so arranged that the side street, so called, can be used for the convenience of the , occupants of the building, and is in fact, extensively used, are not enough to establish a change of front. In the case of dwelling houses, especially, it is within the common knowledge of every one, that, in many instances, its occupants habitually use what they call and understand to be a side entrance, without any notion that such use, in contemplation of law, changed the front of the structure, and consequently, the front of the lot upon which it stands. There can be no change of the front of a town or city lot in law, unless there is a change in fact made. The actual and the legal frontage must be identical.
Where a single building has been erected on a corner lot, the style of architecture alone, or that together with the purpose for which it was designed, and the arrangement of the grounds and outhouses, may indicate that its real front is towards the side street, so called. In such ease, if the character of the improvements satisfactorily indicates that the entire lot is to be used with reference to or in connection with such improvements, a fair inference would arise that the entire frontage was changed. But if the character of the building or other improvements, fronting on the side street, discloses that only a portion of the entire lot was intended to be used as appurtenant thereto, then the frontage of that part only which was to be so used would be changed; unless where such structure being placed on the original front end, would in changing the front of that part of the lot necessarily change the frontage of all that part of the lot which might lie between the structure and the rear end thereof. And, doubtless, wherever a *452 structure fronting ok the side street, appropriated a strip through to the other side of the lot, all the lot lying between the strip so appropriated and its rear end would have its frontage changed.
In applying these principles to the several cases under consideration, it is necessary to ascertain the form of the several lots and the character of the improvements made on each, and existing at the time the city began proceedings to improve the respective streets upon which the lots were claimed to abut.
In the case of Toledo v. William Sheill, the city contended that the defendant’s lot abutted on Erie street as well as on Stickney avenue, and attempted to assess the lot for its full length along the former street, to ¡Day the cost and expense of improving that street. It is a rectangular corner lot extending along Erie street one hundred and twenty feet, and along Stickney avenue twenty-seven and one-half feet; upon it stands a dwelling house, so constructed that its front was consistent with that of the lot when vacant. Another building fronting sixteen feet on Erie street and extending back twenty-seven feet, then stood on said lot, the front half of which its owner, the defendant, occupied for a shoe shop. This building stands upon the rear end of the lot, where the lot is considered with reference to its front on Stickney avenue. According to the principles which we hold should determine the fact of frontage, the lot in question, if vacant, would front on Stickney avenue, and as the style of the dwelling house is as consistent with the continuance of that frontage, its erection did not effect a change in that respect. The other building, however, clearly and distinctly fronted on Erie street, and its front end, or room *453 was designed for and used as a workshop for the owner ; a use nowise appurtenant to the dwelling house, but, on'the contrary, was independent thereof. The style of this building and the chief purpose for which it seems to have been designed indicate a fronting on Erie street. What in relation to this building is unmistakably a front door, opens immediately upon Erie street, and affords the only direct entrance to the shoe shop. This latter building stands on the rear end of the lot when viewed from Stickney avenue, and extends back nearly its entire breadth, so that the building substantially covers the rear sixteen feet of the lot. To that extent the lot should be held to front on Erie street, and the assessment made accordingly.
In the case of Toledo, v. Eversman, the agreed statement of facts shows that the real estate in the petition described, being lot number six hundred and ten (610) in Oliver’s addition to the city of Toledo, Lucas county, Ohio, as laid out and platted, abuts fifty (50) feet upon Broadway street, and one hundred and fifty (150) feet upon Logan street, and is situate on the southwesterly corner of said streets.
Broadway street runs northeasterly and southwesterly, and is intersected at right angles by Logan street.
The entire lot is covered by a brick building, one hundred and twenty (120) feet of which, extending northwesterly from Broadway street, is three stories in height, and the northwesterly thirty (30) feet thereof is two stories in height. This building is used by the plaintiff for the purpose of carrying-on the business of dealing in hardware and stoves, and of manufacturing heating furnaces.
The first story of the three-story part is di *454 vided into two store rooms, which extend the entire length of said part; the store rooms are connected by two arch-ways in the brick partition extending between the same.
In that part of each of the store rooms abutting upon Broadway street there are large double doors which are used for the purpose of ingress and egress from and to said Broadway street, and on each side of said doors are large windows which are used for the purpose of displaying’ the goods and wares of the plaintiff, and for the purpose such windows are generally used.
In that part of the three-story building abutting upon Logan street there is no door except at the northeasterly end thereof, which is used for the purposes of ingress and egress from and to said Logan street.
Adjacent to this door and in the two-story part, is a doorway twelve feet in width leading into a hallway, and connected with stairs by means of which access is had to the second and third floors. To this hall there is access from the store rooms above mentioned.
The two-story portion of the building is used by the plaintiff as a barn in which is kept his horses and wagons, used by him in carrying on his business and for no other purpose, and from this opens onto Logan street a door wide enough to admit the passage of a horse and wagon. At the northwesterly end of said store rooms there is a large double door about five feet in width through which access is obtained to the two-story part. Westerly of this doorway, and at the northwesterly end of said store rooms, there is a window.
The entire two-story building is used by the plaintiff in carrying’ on his business, and for no *455 other purpose. The third floor of the building is used as a public hall, and access to the hallway above mentioned is had both from the Logan street entrance and from the store rooms above mentioned. .
At the corner of Broadway and Logan streets there is a window extending upon Logan street about two and one-half feet and upon Broadway street about two and one-half feet. On the second floor of both buildings, and upon the third floor of said building, there are windows upon both the Broadway and Logan street sides. •
The record contains a photograph of the building, showing that, according to its style of architecture and plan of construction, it fronted on Broadway, but was provided with openings admitting of the free use of Logan street; and the evidence given by the owner himself shows that the Logan street entrances were freely used in connection with his business. One of those entrances was the chief means of ingress and egress to and from a public hall in the third story. Another of them seems to have been the only entrance to that part of the building used for a barn.
The circuit court found that the building and consequently the lot fronted on Broadway alone. This holding was correct. The building wah an entirety — a single structure designed for conducting a particular business — and of such form and style, that according to the common understanding and notion respecting the subject it fronted on Broadway. One side extended along Logan street, and naturally the use of that street would be both convenient and advantageous to its occupants. In view of this situation the owner in the plan of construction provided facilities for such uses, and *456 afterwards those facilities were used at their pleasure by the owner, his employees and customers; this use, however, neither changed the front of the building, nor gave it a double front; it was a use incidental, merely to a structure thus favorabty situated whose plan of construction gave it a recognized front- in another direction. Where a building has been constructed after a plan that indicates unmistakably or even with reasonable certainty its front, the circumstances that facilities for side entrances have been provided and are afterwards used by its occupants, and those who for social or business purposes, visit the house, can operate only slightly, if at all, to effect a change in this particular.
In the case of Toledo v. Annie Beckler, an agreed statement of the facts discloses that: “The real estate in the petition described, being’ lot number two hundred and six (206), in Knower’s addition to the city of Toledo, Lucas county, Ohio, as platted and laid out, abuts forty (40) feet upon Knower street, and one hundred and six and 26-100(106.26) feet upon Maumee avenue. Knower street extends east and west, intersecting Maumee avenue at right angles, and said lot number two hundred and six is (206) situate upon the northwest corner of said streets. The north end of said lot abuts forty (40) feet upon an alley.
“May 5, 1890, there was, and continuously ever since said time, there has been upon said lot a two-story frame dwelling, with a one-story addition which was at said time, and continuously ever since has been, used and occupied by said plaintiff as her residence.
“There was not, at said time, nor is there now any other building upon said lot, except a small *457 shed, which was and is located upon the line of said alley, and was and is used for storing fuel.
“The narrow part of the two-story, or main part of the house, faces Knower street, and the long side thereof faces Maumee avenue. In the two-story part facing Knower street, there was and is a door from which extends a walk leading to the street; in the two-story part of the house facng Maumee avenue there is no opening except windows; on the northerly side of the two-story part there was and is a one-story addition, which is not as wide as the main part of the house; in the side of this addition, facing Maumee avenue, there is a door opening onto a porch, which extends along this side of the addition, and there was and is a walk leading from said Maumee avenue to said porch, and on a line with said door, there was and is a door opening from the sitting’ room, in the main part, onto this porch; the first floor of the two-story part is divided into three rooms and a hallway; the door facing Knower street opens into a hallway; the hallway has therein a stairway and two doors, the one leading to the sitting’ room, and the other into what is used as a parlor; the room next to Knower street is used as a parlor or front room, and has windows on the Knower street and Maumee avenue sides; behind the parlor is an ordinary family sitting room, with a bedroom off it; the one-story addition constitutes the dining room and kitchen, from which is a door leading onto the porch above described, and a door in the north end, opening into a small woodshed.
“There was not, at the time aforesaid, and has not been, any fence around this lot. The gables of the two-story part are upon the north and south ends thereof; the gable of the one-story part is on *458 the north end thereof, and the roofs on both parts of the building slope east and west.
“The part of the house facing Knower street is what is known as the front elevation, and there is no other front elevation thereto.
“It was further admitted by the plaintiff that if she were called upon to testify, she would testify that the entrances to her house from Knower street and from Maumee avenue were both used for the purposes of ingress and egress to and from said house, but that the family most frequently used the entrance on Maumee avenue for said purpose. ”
In addition to this agreed statement, a photograph of the premises was introduced in evidence which plainly shows that the dwelling house, according to the plan of its construction, should be held to front toward Knower street. The circuit court held that the premises fronted on Knower street. We think this holding is correct. According to the principles we hold should be applied to determine the question of frontage, the lot, if vacant, would front on that street. A dwelling house stands on the lot, the front of which, while it is not indicated with entire clearness, may fairly be held to face in the game direction. It has an entrance from Maumee avenue which its occupants and many others having occasion to visit them find more convenient than the entrance from Knower street, and on that account use it more frequently than they use the latter entrance. This use, however, as we have seen, is entitled to very little weight upon1-the question of frontage in any case, and especially respecting the front of a dwelling house, where the use may vary with the ea- *459 price of its occupants, or change entirely with a change of tenants.

Judgment accordingly.